**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |
|---|---|
| **BTL INDUSTRIES, INC.**,<br><br>     Plaintiff,<br><br>v.<br><br>**MODIFI LASER & BODY SCULPTING LLC and KRISTTAL ELIZABETH BRIDGES**,<br><br>     Defendants. | **Civil Action No. 4:25-cv-01282**<br><br>**Jury Trial Demanded** |

## COMPLAINT

Plaintiff BTL Industries, Inc. ("Plaintiff" or "BTL"), by its attorneys, for its Complaint against Modifi Laser & Body Sculpting LLC ("Modifi") and Kristtal Elizabeth Bridges (collectively, "Defendants"), alleges as follows:

## NATURE OF THIS ACTION

1. This is a civil action by BTL arising out of Defendants' patent infringement in violation of the patent laws of the United States, 35 U.S.C. § 1 *et seq.*; Defendants' trademark infringement, unfair competition, false designation of origin, and false advertising under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a); Defendants' trademark infringement and unfair competition under the Texas Deceptive Trade Practices Act, Texas Business & Commercial Code §§ 17.46, 17.50, and the common law of the State of Texas.

2. BTL and its affiliates pioneered the application of high-intensity, focused electromagnetic technology in non-invasive aesthetic body-contouring devices. In June 2018, BTL launched the ground-breaking EMSCULPT® aesthetic body-contouring device that uses this technology in the United States, after the device was cleared by the U.S. Food and Drug

1

Administration (FDA). BTL and its affiliates protected the EMSCULPT® device—and the technology used in the device—with numerous patents and federally registered trademarks and copyrights.

3.      Defendants promote and sell services using certain non-invasive body contouring devices in the United States. On information and belief, Defendants have and continue to infringe BTL's patents directed to body-contouring methods and devices by offering, selling, and performing body-contouring services using these devices. On information and belief, Defendants advertise these body-contouring services by improperly using BTL's trademarks, and confusingly similar variations of these trademarks, in their promotional and informational materials for these body-contouring services.

4.      Defendants infringing and fraudulent conduct not only irreparably harms BTL and the goodwill associated with its brand but may also pose potentially serious health and safety consequences to the public as, on information and belief, Defendants' device(s) is not FDA cleared. Defendants' use of the EMSCULPT®, EMSCULPT NEO®, and BTL Logo marks, and the confusingly similar EMSCULPTOR, UMSCULPTOR NEO, EMCULPTOR NEO, EMSCULPTOR NEO, and HIEMS marks misleads consumers into believing that Defendants' device(s) and body-contouring services are associated and/or otherwise affiliated with BTL.

5.      BTL is thus forced to file this action to combat Defendants' unauthorized use of its patents and federally registered trademarks, as well as to protect unknowing consumers from purchasing body-contouring services performed by devices that are not FDA cleared.

6.      Defendants willful and continuing trademark infringement, unfair competition, and patent infringement should be enjoined permanently to curb the harm to BTL's reputation and the

relevant segment of the public at large. BTL has been, and continues to be, irreparably damaged as a result of Defendants' willful actions and seeks injunctive and monetary relief.

## PARTIES

7.      BTL is a corporation organized and existing under the laws of the State of Delaware with a principal place of business at 362 Elm Street, Marlborough, Massachusetts 01752.

8.      On information and belief, Modifi is a limited liability company organized and existing under the laws of the State of Texas with its principal place of business at 7352 Senate Avenue, Jersey Village, Texas 77040.

9.      On information and belief, Kristtal Elizabeth Bridges is an individual and registered agent, director, and owner of Modifi who resides in this District.

## JURISDICTION AND VENUE

10.      This Court has subject-matter jurisdiction over BTL's claims arising under the patent laws of the United States, 35 U.S.C. § 100, *et seq.* and the Lanham Act, 15 U.S.C. §§ 1051, 1121, pursuant to 28 U.S.C. §§ 1331, 1332, and 1338(a)–(b).

11.      Subject-matter jurisdiction for the trademark and unfair competition claims exists with respect to the claims asserted in this Complaint pursuant to 28 U.S.C. §§ 1331 and 1338.

12.      This Court has personal jurisdiction over Defendants because they or their employees have committed acts of patent infringement under 35 U.S.C. § 271(a), (b), or (c), and are subject to this Court's jurisdiction under 28 U.S.C. § 1400(b).

13.      This Court has personal jurisdiction over Modifi because, on information and belief, it is a Texas limited liability company and has its principal place of business in this District.

14.      This Court has personal jurisdiction over Defendant Kristtal Elizabeth Bridges because, on information and belief, Ms. Bridges is the owner, moving, conscious force behind Defendant Modifi's actions, and is a resident of this District.

15. This Court has supplemental jurisdiction over BTL's claims arising under the laws of Texas, pursuant to 28 U.S.C. § 1367(a), because BTL's state-law claims are so related to BTL's federal law claims that they form part of the same case or controversy and derive from a common nucleus of operative fact.

16. Further, the acts complained of herein occurred in Texas.

17. Similarly, the exercise of personal jurisdiction over Defendants comports with the due process requirements of the United States Constitution because:

(a) Defendants have purposefully established "minimum contacts" with the State of Texas and this District; and

(b) the exercise of personal jurisdiction over Defendants will not offend the traditional notions of fair play and substantial justice.

18. Therefore, this Court has specific and general jurisdiction over Defendants.

19. Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400 at least because Defendants are residents of and have their principal place of business in this District and are subject to personal jurisdiction in this District.

## **BACKGROUND**

20. BTL specializes in the innovation, development, and sale of equipment and treatments for the aesthetics industry in the United States. BTL and its affiliates developed proprietary technology that uses high-intensity electromagnetic stimulation to tone and strengthen muscles in targeted areas. BTL applied its technology to develop a series of new and innovative sFDA-cleared devices and developed protocols for using the technology for aesthetic therapies. BTL denotes its products and services that feature this technology with its HIFEM® brand and other trademarks.

21.     The first such device that BTL developed was the EMSCULPT® device, a standalone, non-invasive, FDA-cleared, body-contouring device. *See* Exhibit A (BTL Press Release). BTL's patent-protected EMSCULPT® device uses high-intensity electromagnetic energy to induce powerful muscle contractions in a patient. BTL has developed specifically configured EMSCULPT® applicators, tailoring each type of applicator to a specific target area.



22.     The EMSCULPT® device uses innovative and patent-protected protocols for aesthetic therapies. BTL's proprietary protocols create repetitive muscle contractions that result in a non-invasive method of toning muscle and body sculpting. *See* https://bodybybtl.com/solutions/emsculpt-neo/.

23.     In June 2018, BTL received clearance from the FDA for its EMSCULPT® device with large applicators and began to sell the device in the United States for the improvement of abdominal tone, strengthening of the abdominal muscles, development of a firmer abdomen, and for strengthening, toning, and firming of the buttocks and thighs. *See Id.* In October 2018, BTL received FDA clearance for an additional indication for the improvement of muscle tone and firmness and for strengthening muscles in arms. *Id.* In July 2019, BTL received FDA clearance for the EMSCULPT® device with both large and small applicators for the improvement of abdominal tone, strengthening of the abdominal muscles, development of a firmer abdomen, strengthening, toning, and firming of the buttocks, thighs, and calves, as well as improvement of muscle tone and firmness for strengthening muscles in arms. *Id.* The smaller applicators are intended for smaller treatment areas.

24.     BTL markets and distributes its non-invasive aesthetic body-contouring EMSCULPT® device to healthcare professionals, and BTL licenses these healthcare professionals to provide the associated treatment services administered via authentic EMSCULPT® devices that incorporate its proprietary technology, muscle toning protocols, and applicators in the United States.

25.     BTL's EMSCULPT® device created a new market in which it quickly became the innovative industry leader. Before BTL launched the EMSCULPT® device in 2018, no other product used high-intensity, focused, electromagnetic technology to tone and firm muscle for non-invasive, aesthetic body contouring.

26.     The aesthetic industry has recognized BTL's innovation, hailing it has having taken "the aesthetics industry by storm;" praising BTL as being the first to apply high-intensity, focused,

electromagnetic energy technology for aesthetics; and lauding the EMSCULPT® device as having "transformed treatment protocols." Exhibit A.

27.    BTL's market success and superior performance are by-products of its technological innovations over the past several decades. BTL continues to implement these innovations today. BTL has protected its investment into its innovations and its brand with patents and trademarks. BTL lists the patents that cover its products, including EMSCULPT®, on its website at www.btlnet.com/patents.

### A.    The Asserted Patent

28.    On November 19, 2019, the United States Patent and Trademark Office ("USPTO") duly and lawfully issued U.S. Patent No. 10,478,634 (the "'634 Patent"), entitled "Aesthetic Method of Biological Structure Treatment by Magnetic Field" to BTL Medical Technologies S.R.O. A true and correct copy of the '634 Patent is attached hereto as Exhibit B. The '634 Patent was exclusively licensed to BTL, and BTL possesses the exclusive right of recovery for any past, present, or future infringements of the '634 Patent, including equitable relief and damages.

### B.    BTL's Trademarks

29.    BTL uses and licenses registered and unregistered trademarks and trade dress to market its aesthetic equipment and treatments in the United States including the following federally registered marks (the "BTL Trademarks"):

| Reg. No. | Mark | Reg. Date | First Use in Commerce or Priority Date | Goods / Services |
|---|---|---|---|---|
| 5,688,619 | **HIFEM** | Mar. 5, 2019 | Sept. 19, 2017 | Class 10: Medical and aesthetic apparatus and instruments generating electromagnetic, magnetic, electrical, mechanical, radiofrequency or thermal energy for use in skin treatment procedures; medical |

| Reg. No. | Mark | Reg. Date | First Use in Commerce or Priority Date | Goods / Services |
|---|---|---|---|---|
| | | | | apparatus and instruments for body toning and body shaping; medical apparatus and instruments for the removal of fat, circumference reduction, tightening of skin, reduction of wrinkles, reduction of scars, reduction of stretch marks, rejuvenation of skin, treatment of pigmentation spots, increase in muscle volume, increase in number of muscle fibres and increase in muscle tonus; medical apparatus and instruments for the treatment of cellulite; therapeutic facial masks; facial toning machines for cosmetic use; electric stimulation and magnetic stimulation apparatus for physical therapy purposes for the treatment of nerve and muscle pain and elimination of muscular spasms; gynecological and urological apparatus and instruments, namely for genital rejuvenation, treatment sexual dysfunction, gynecological treatment and pelvic floor treatment. <br><br> Class 44: Medical services; medical equipment rental; cosmetic and plastic surgery; beauty salons; liposuction services; medical removal of body cellulite. |
| 5,572,801 | **EMSCULPT** | Oct. 2, 2018 | Sept. 29, 2017 | Class 10: Medical apparatus and instruments for the treatment of cellulite; medical apparatus and instruments for |

| Reg. No. | Mark | Reg. Date | First Use in Commerce or Priority Date | Goods / Services |
|---|---|---|---|---|
| | | | | body toning and body shaping; medical apparatus and instruments for the removal of fat, circumference reduction, tightening of skin, reduction of wrinkles, reduction of scars, reduction of stretch marks, rejuvenation of skin, and treatment of pigmentation spots; above medical apparatuses with exception for the treatment of the nasopharynxs including inhalers and nasal irrigators; massage apparatus; medical apparatus and instruments for aesthetic skin treatment procedures; medical apparatus generating electromagnetic, magnetic, electrical, mechanical or thermal energy for use in skin treatment procedures; medical apparatus particularly apparatus for pain management, elimination of muscle spasms; gynaecological and urological apparatus and instruments, namely, for genital rejuvenation, treatment sexual dysfunction, gynecological treatment and pelvic floor treatment |
| 6,069,279 | EMSCULPT | June 2, 2020 | Sept. 29, 2017 | Class 44: medical services; gynecology services; medical equipment rental; cosmetic and plastic surgery; beauty salons; liposuction services; removal of body cellulite |
| 5,915,636 | EM | Nov. 19, 2019 | Jan. 8, 2019 | Class 10: Physical therapy devices for treating muscle spasms and pain management; medical apparatus and |

| Reg. No. | Mark | Reg. Date | First Use in Commerce or Priority Date | Goods / Services |
|---|---|---|---|---|
| | | | | instruments, in particular apparatus and instruments for the treatment of cellulite, apparatus and instruments for body toning and body shaping, and apparatus and instruments for the removal of fat, circumference reduction; medical devices for use in treating gynecological disorders, pelvic area disorders, bladder disorders and incontinence.<br><br>Class 44: Health assessment services; medical services, namely, providing treatment for patients with gynecological disorders, pelvic area disorders, bladder disorders and incontinence; gynecological services; urology medical care services; rental of medical apparatus and equipment; cosmetic and plastic surgery; beauty salon services; liposuction and surgical body shaping services; medical services, namely, removal of body cellulite; physical therapy services. |
| 6,206,098 | EM | Nov. 24, 2020 | July 2018 | Class 10: Physical therapy devices for treating muscle spasms and pain management; medical apparatus and instruments, in particular apparatus and instruments for the treatment of cellulite, apparatus and instruments for body toning and body shaping, and apparatus and instruments for the removal of fat, |

| Reg. No. | Mark | Reg. Date | First Use in Commerce or Priority Date | Goods / Services |
|---|---|---|---|---|
| | | | | circumference reduction; medical devices for use in treating gynecological disorders, pelvic area disorders, bladder disorders and incontinence.<br><br>Class 44: Health assessment services; medical services, namely, providing treatment for patients with gynecological disorders, pelvic area disorders, bladder disorders and incontinence; gynecological services; urology medical care services; rental of medical apparatus and equipment; cosmetic and plastic surgery; beauty salon services; liposuction and surgical body shaping services; medical services, namely, removal of body cellulite; physical therapy services. |
| 6,373,947 | **EMSCULPT NEO** | June 1, 2021 | Oct. 17, 2020 | Class 10: Medical apparatus and instruments for the treatment of cellulite; medical apparatus and instruments for body toning and body shaping; medical apparatus and instruments for the removal of fat, circumference reduction, tightening of skin, reduction of wrinkles, reduction of scars, reduction of stretch marks, rejuvenation of skin, and treatment of pigmentation spots; medical apparatus and instruments for aesthetic skin treatment procedures; medical apparatus generating electromagnetic, magnetic, |

| Reg. No. | Mark | Reg. Date | First Use in Commerce or Priority Date | Goods / Services |
|---|---|---|---|---|
| | | | | electrical, mechanical or thermal energy for use in skin treatment procedures; medical apparatus particularly apparatus for pain management, elimination of muscle spasms; gynecological and urological apparatus and instruments, namely, for genital rejuvenation, treatment of sexual dysfunction, gynecological treatment and pelvic floor treatment.<br><br>Class 44: Medical services; medical equipment rental; cosmetic and plastic surgery; beauty salons; liposuction services; medical services, namely, removal of body cellulite. |
| 4,750,101[1] |  | June 9, 2015 | Jan. 24, 2014 | Class 10: Physiotherapy apparatus in the nature of apparatus for electrotherapy, laser therapy, ultrasound therapy, magnetotherapy, and shockwave therapy, all for electrical nerve and muscle stimulation, infrared heat, wound healing, pain therapy, and treatment of inflammation; body rehabilitation apparatus for medical purposes; esthetic massage apparatus; hydrotherapy massage apparatus; medical and veterinary diagnostic apparatus and instruments, namely, electrocardiographs, heart monitors, spirometers, and |

---

[1] This registration hereinafter referred to as the "BTL Logo."

| Reg. No. | Mark | Reg. Date | First Use in Commerce or Priority Date | Goods / Services |
|---|---|---|---|---|
| | | | | blood pressure monitors; Medical devices for nonsurgical cosmetic treatments; medical devices for body toning and body shaping, tightening of skin, treatment of skin laxity, wrinkles, rhytides, and cellulite, and fat removal; lymphatic drainage equipment, namely, massage apparatus and lasers for medical use |

30.    BTL has continuously and exclusively used the BTL Trademarks and has never abandoned them. The BTL Trademarks are validly registered in the United States and are in full force and effect. True and correct "status" copies of the BTL Trademark registrations, obtained from the Trademark Status Document Retrieval ("TSDR") database of the USPTO, are attached to this Complaint as Exhibit C. These registrations constitute *prima facie* evidence of validity of the BTL Trademarks and of BTL's exclusive right to use the BTL Trademarks under 15 U.S.C. § 1057(b).

31.    The BTL Trademarks therefore perform an important source-identifying function for BTL's aesthetic body-contouring devices like the EMSCULPT® and associated treatment services. The BTL Trademarks signify to purchasers that the body-contouring devices come from BTL, and the body-contouring services are rendered by BTL's devices and administered by BTL-trained and BTL-authorized service providers. The BTL Trademarks are inherently distinctive and are associated with BTL's innovative aesthetic body-contouring devices that have acquired considerable brand loyalty through BTL's sales and promotion, and direct word-of-mouth promotion by consumers. In addition, BTL has expended significant time, money, and resources

in developing, marketing, advertising, promotion, and selling its products and services under its trademarks, including the BTL Trademarks, in the United States. The market reputation and consumer goodwill associated with the BTL Trademarks are of significant value to BTL.

### C. Defendants' Unlawful Conduct

32.     On information and belief, Defendants have since at least January 6, 2023, advertised body-contouring services using a body-contouring device(s) (the "Accused Device(s)") using the marks EMSCULPT, EMSCULPT NEO, the BTL logo, EMSCULPTOR, EMCULPTOR NEO, UMSCULPTOR NEO, EMSCULPTOR NEO, and HIEMS. On information and belief, Defendants' activities are ongoing, despite attorneys for BTL informing Defendants that their activities violate BTL's rights on multiple occasions. On June 13, 2023, attorneys for BTL sent Defendants a letter via email informing them of their infringing conduct and BTL's intellectual property rights. On July 6, 2023, attorneys for BTL sent a follow-up letter via USPS certified mail. On October 8, 2024, attorneys for BTL sent a follow-up letter via email and FedEx. FedEx provided proof of delivery on October 10, 2024, at Defendants' principal place of business. On October 30, 2024, attorneys for BTL sent a letter via email and FedEx apprising Defendants' of BTL's intellectual property and Defendants' infringing conduct. FedEx provided proof of delivery on October 31, 2024, at Defendants' principal place of business. On November 22, 2024, attorneys for BTL sent a follow up email to Defendants. *See* Exhibit D (Letters and Emails). To this day Defendants have not responded to any of BTL's letters or emails.

33.     On information and belief, the Accused Device(s) implements the same or substantially the same technology as the '634 Patent.

34.     On information and belief, the Accused Device(s) includes or performs each and every limitation of at least one claim of the Asserted Patent, either literally or under the doctrine of equivalents. By offering services using, making, offering to sell, selling, and/or importing into

the United States the Accused Device(s), Defendants have directly infringed, and continue to directly infringe, literally or under the doctrine of equivalents, one or more claims of the Asserted Patent under 35 U.S.C. § 271(a).

35.     On information and belief, Defendants have been aware of the Asserted Patent since at least June 13, 2023, when BTL informed Defendants via email of their infringement of BTL's intellectual property. Additionally, BTL's "Patent Labeling" webpage (https://www.btlnet.com/patents) also lists the Asserted Patent and identifies it as covering the EMSCULPT® device.

36.     Defendants have used and continue to use the BTL Trademarks, and confusingly similar variations of the BTL Trademarks, in their informational and promotional materials for their body-contouring services using the Accused Device(s).

37.     Specifically, the images below are representative of Defendants' infringing conduct:



















19







38.    On information and belief, as shown in the below table, Defendants have modified one of their prior posts on Instagram from January 6, 2023, to remove the BTL Trademarks from the Accused Device shown in the post.

| Screenshot taken from Defendants' Instagram post dated January 6, 2023 | Screenshot taken from Defendants' Instagram post dated November 4, 2024 |
|---|---|
|  | |

39.     On information and belief, Defendants' principal place of business includes an advertisement on its façade that mirrors one of BTL's copyrighted works.

| BTL's copyrighted work | Modifi's advertisement on its Facade |
|---|---|
|  | |

40.     On information and belief, Ms. Bridges is the moving, conscious, and active force behind Modifi's infringing conduct. For example, on information and belief, Ms. Bridges is the owner and director of Modifi.

41.     Ms. Bridges, as the sole owner and director of Modifi, is and has been the individual possessing sole decision-making authority over the content of Modifi's technical, information, and promotional materials for the Accused Device(s).

42.     On information and belief, Ms. Bridges has and continues to willfully and maliciously serve as the moving, conscious, and active force behind Modifi's infringing conduct— not least because Ms. Bridges has had constructive knowledge of BTL's intellectual property at least since June 13, 2023, when counsel for BTL informed Defendants via email of their potential infringement of BTL's intellectual property.

43.     On information and belief, Defendants' have recently abandoned their Instagram account @modifisculpting (https://www.instagram.com/modifisculpting/) on November 5, 2024.

Defendants switched to using the Instagram account @modifihtx (https://www.instagram.com/modifihtx/). *See* https://www.instagram.com/p/DCAk8f3P_xA/. On information and belief, this was done following a takedown request submitted to Instagram by BTL.

44.     Defendants' use of EMSCULPT, EMSCULPT NEO, the BTL logo, EMSCULPTOR, EMCULPTOR NEO, UMSCULPTOR NEO, EMSCULPTOR NEO, and HIEMS is without BTL's authorization.

45.     Defendants' advertising includes the claims that the Accused Device(s) can "create[e] a more defined physique[,] 25% Muscle Gain + 19% Fat Loss," provide "25% Fat Loss, 20% Muscle Gain," and a "16% increase in muscle mass." On information and belief, Defendants have not performed clinical studies demonstrating these results nor have any clinical studies by any other entity using the Accused Device(s) been performed. Rather, these clinical study results are taken from BTL's own clinical studies using its EMSCULPT® and EMSCULPT NEO® devices.

46.     On information and belief, the Accused Device(s) is not an authentic BTL device. On information and belief, Defendants' Accused Device(s) uses time-varying magnetic fields that are applied to a patient's skin and held there using a flexible belt attached to an applicator that includes a magnetic field generating coil. On information and belief, the magnetic field generating coil generates a time-varying magnetic field and the device applies a magnetic flux of 50 T cm$^2$ to 1,500 T cm$^2$ and causes muscle contractions.

47.     On information and belief, the Accused Device(s) is not FDA-approved.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 10,478,634

48.     BTL repeats and re-alleges paragraphs 1–47 as if fully set forth herein.

23

49.     The '634 Patent is directed towards a method for toning muscles in a patient using time-varying magnetic fields. Exemplary Claim 1 of the '634 Patent recites:

> A method for toning muscles in a patient using time-varying magnetic fields, the method comprising:
>
> placing a first applicator comprising a magnetic field generating coil in contact with a patient's skin or clothing at a body region of the patient, wherein the body region is an abdomen or a buttock;
>
> coupling the first applicator to the patient with an adjustable flexible belt so that the belt holds the first applicator to the patient's skin or clothing;
>
> providing energy to the magnetic field generating coil in order to generate a time-varying magnetic field; and
>
> applying a magnetic fluence of 50 T cm$^2$ to 1,500 T cm$^2$ to the body region,
>
> wherein the time-varying magnetic field is applied to the body region with a magnetic flux density sufficient to cause a muscle contraction in the body region.

50.     Defendants have directly infringed and continue to directly infringe, literally or under the doctrine of equivalents, at least claim 1 of the '634 Patent by making, using, offering to sell, selling, or importing the Accused Device(s) in the United States.

51.     Defendants have and continue to promote and perform the preamble of claim 1 of the '634 Patent, which recites "[a] method for toning muscles in a patient using time-varying magnetic fields." Advertising and promotional information for the Accused Device(s) indicates that the body-contouring services performed by the Accused Device(s) tone a patient's muscles using time-varying magnetic fields. For example, in the below screenshot taken from Defendants' Instagram account, the "Emsculptor" device (on information and belief, the Accused Device(s))

"offers a non-invasive solution for reducing fat, achieving tighter skin, and increased muscle mass." On information and belief, this language indicates that the Accused Device(s) tones a patient's muscles.



In another Instagram post dated June 28, 2024, it states that the "EMSCULPTOR NEO" (on information and belief, the Accused Device(s)) "visibly tone[s] her abdomen." On information and belief, this language indicates that the Accused Device(s) tones a patient's muscles.



On Defendants' website under the "booking" page, language used indicates that the body-contouring services performed by the Accused Device(s) use magnetic fields. For example, the following screenshot taken from the "booking" page states that the Accused Device(s) using "High-Intensity Electromagnetic Muscle Stimulation" to "creat[e] a more defined physique." On information and belief, this language indicates that the Accused Device(s) uses magnetic field to tone a patient's muscles.



On information and belief, a reasonable opportunity for further investigation or discovery will show that the Accused Device(s)'s magnetic fields are time-varying.

52.    Defendants have and continue to promote and perform the claimed step of "placing a first applicator comprising a magnetic field generating coil in contact with a patient's skin or clothing at a body region of the patient, wherein the body region is an abdomen or a buttock."  On information and belief, the Accused Device(s) includes at least one applicator comprising a magnetic field generating coil. On information and belief, Defendants place these applicators on the skin of a patient's abdomen or buttocks or over clothing covering these body regions. On information and belief, advertising and promotional materials depict the Accused Device(s)'s applicators attached to the skin of patients at various body regions including the abdomen or buttock.





On information and belief, a reasonable opportunity for further investigation or discovery will show that the Accused Device(s)'s applicators contain magnetic field generating coils.

53.    Defendants have and continue to promote and perform the claimed step of "coupling the first applicator to the patient with an adjustable flexible belt so that the belt holds the first applicator to the patient's skin or clothing." On information and belief, advertising and promotional materials depict the Accused Device(s)'s applicators attached to the skin of patients using an adjustable flexible belt at various body regions including the abdomen or buttock.





54.     Defendants have and continue to promote and perform the claimed step of "providing energy to the magnetic field generating coil in order to generate a time-varying magnetic field." On information and belief, a reasonable opportunity for further investigation and discovery will show that the method of operation of the Accused Device(s) includes providing a power supply which transmits energy to the applicators, via an energy source and energy storage device, which in turn generates time-varying magnetic fields. On information and belief, the Accused Device(s) includes a power supply which transmit energy to the applicators, which in turn generate time-varying magnetic fields.

55.     Defendants have and continue to promote and perform the claimed step of "applying a magnetic fluence of 50 T cm$^2$ to 1,500 T cm$^2$ to the body region." On information and belief, a reasonable opportunity for further investigation or discovery will show that the Accused Device(s)'s magnetic field generating coils are configured to generate a time-varying magnetic field with a magnetic flux density in a range of 0.1 Tesla to 7 Tesla on a surface of the magnetic field generating coils and are of an area sufficient to result in a magnetic fluence in the range of 50 T cm$^2$ to 1,500 T cm$^2$.

56.     Defendants have and continue to promote and perform the claimed step "wherein the time-varying magnetic field is applied to the body region with a magnetic flux density sufficient to cause a muscle contraction in the body region." On information and belief, advertising and promotional materials for the Accused Device(s) promote and advertise the Accused Device(s) ability to generate magnetic fields sufficient to cause muscle contractions in the targeted body region.







57.     Defendants have directly infringed and continue to directly infringe, literally or under the doctrine of equivalents, at least claim 1 of the '634 Patent by making, using, offering to sell, or importing at least the Accused Device(s) in the United States. On information and belief, Defendants were aware of the '634 Patent since before the filing of this Complaint. On information and belief, Defendants have known that the Accused Device(s) is designed for a use that infringes one or more claims of the '634 Patent, and the Accused Device(s) lacks a substantial non-infringing use. On information and belief, Defendants have, and will continue to, intentionally directly infringe with knowledge of the '634 Patent and knowledge that their acts are directly infringing.

58.     Defendants' direct infringement of the '634 Patent has been, and continues to be, willful. On information and belief, Defendants have been aware of the '634 Patent before the filing of this Complaint and have infringed the '634 Patent willfully and deliberately and with knowledge that such conduct violates 35 U.S.C. § 271.

59.     Defendants' direct infringement of the '634 Patent has damaged, and continues to damage, BTL in an amount yet to be determined, of at least a reasonable royalty and/or lost profits that BTL would have made but for Defendants' infringing acts as provided by 35 U.S.C. § 284.

60.     BTL will suffer irreparable harm unless Defendants are enjoined from infringing the '634 Patent.

## COUNT II: TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114

61.     BTL repeats and realleges paragraphs 1–47 as if fully set forth herein.

62.     BTL owns exclusive rights to the BTL Trademarks in the United States. The United States trademark registrations for the BTL Trademarks are in full force and effect.

63.     Defendants, without BTL's permission or consent, have used and continue to use the BTL Trademarks and confusingly similar variations thereof in connection with the advertising, promotion, sale, and offer for sale of body contouring services using the Accused Device(s).

64.     On information and belief, Defendants' unauthorized use of the EMSCULPT®, EMSCULPT NEO®, and the BTL Logo trademarks to advertise and promote body contouring services using the Accused Device(s), *see supra* ¶ 31–39, has caused and is likely to cause confusion, mistake, and deception among the public as to the origin and quality of the Accused Device(s) and services; their affiliation, connection, or association with BTL; and the sponsorship or approval by BTL of the Accused Device(s) and body-contouring services.

65.     On information and belief, Defendants' unauthorized use of the HIEMS mark— which is a confusingly similar variation of BTL's HIFEM® federally registered trademark—to advertise and promote body-contouring services using the Accused Device(s), *see supra* ¶ 31–39, has caused and is likely to cause confusion, mistake, and deception among the public as to the origin and quality of the Accused Device(s) and services; their affiliation, connection, or association with BTL; and the sponsorship or approval by BTL of the Accused Device(s) and body-contouring services.

66.     On information and belief, Defendants' unauthorized use of the EMSCULPTOR, UMSCULPTOR NEO, EMCULPTOR NEO, and EMSCULPTOR NEO marks—which are confusingly similar variations of BTL's EMSCULPT® and EMSCULPT NEO® federally registered trademarks—to advertise and promote body-contouring services using the Accused

Device(s), *see supra* ¶ 31–39, has caused and is likely to cause confusion, mistake, and deception among the public as to the origin and quality of the Accused Device(s) and services; their affiliation, connection, or association with BTL; and the sponsorship or approval by BTL of the Accused Device(s) and body-contouring services

67.    Defendants have had knowledge of BTL's rights in the BTL Trademarks since before the filing of this Complaint. Under 15 U.S.C. § 1072, Defendants have had constructive knowledge of BTL's rights in each of the EMSCULPT® trademarks since at least the dates the registration for each of these trademarks first issued to BTL. Under 15 U.S.C. § 1072, Defendants have had constructive knowledge of BTL's rights in the EMSCULPT NEO® trademark since at least the date the registration for this trademark first issued to BTL. Under 15 U.S.C. § 1072, Defendants have had constructive knowledge of BTL's rights in each of the EM® trademarks since at least the dates the registration for each of these trademarks first issued to BTL. Under 15 U.S.C. § 1072, Defendants have had constructive knowledge of BTL's rights in the BTL Logo since at least the date the registration for this trademark first issued to BTL. Under 15 U.S.C. § 1072, Defendants have had constructive knowledge of BTL's rights in the HIFEM® trademark since at least March 5, 2019—the date the registration for the HIFEM® trademark first issued to BTL. Moreover, a straightforward Google search for "BTL" and "trademarks" lists the BTL Trademarks as associated with BTL. https://www.trademarkia.com/company-btl-industries-inc-3618568-page-2-2.

68.    The knowing and intentional nature of the acts set forth herein renders this an exceptional case under 15 U.S.C. § 1117(a).

69.    Defendants' trademark infringement has damaged, and continues to damage, BTL in an amount yet to be determined, but of at least the profits that Defendants have made as a result

of its infringement, plus the cost of this action. Defendants' trademark infringement is the direct and proximate cause of BTL's damages.

70.    BTL is entitled to an injunction restraining Defendants, their officers, agents, and employees, and all persons acting in concert with Defendants, from engaging in any further such acts in violation of federal trademark law.

## COUNT III: FEDERAL UNFAIR COMPETITION, FALSE DESIGNATION OF ORIGIN, AND FALSE ADVERTISING UNDER 15 U.S.C. § 1125

71.    BTL repeats and re-alleges paragraphs 1–47 as if fully set forth herein.

72.    Defendants' unauthorized, intentional, and willful use of the BTL Trademarks and confusingly similar variations thereof to promote, market, offer for sale, and sell body-contouring services using the Accused Device(s) has and is likely to confuse, mislead, or deceive as to the origin and quality of these body-contouring services and the Accused Device(s), their association with BTL and BTL's EMSCULPT® and EMSCULPT NEO® devices, and the sponsorship or approval by BTL of these body-contouring services and the Accused Device(s).

73.    Defendants' unauthorized, intentional, and willful use of the BTL Trademarks and confusingly similar variations thereof to promote, market, offer for sale, and sell body-contouring services using the Accused Device(s) misrepresents the nature, characteristics, qualities, and geographic origin of these body-contouring services and the Accused Device(s).

74.    Defendants' actions constitute a willful violation of 15 U.S.C. § 1125.

75.    Defendants' actions described above have injured and, if permitted to continue, will continue to harm BTL's business and the goodwill associated with its brand, as well as BTL's reputation for providing high-quality and safe body-contouring aesthetic devices and procedures subject to strict quality control standards that have been cleared by the FDA.

76.    BTL has no adequate remedy at law, and if Defendants' actions are not enjoined, BTL will continue to suffer irreparable harm to its reputation and the goodwill of the BTL brand.

## COUNT IV: FEDERAL TRADEMARK COUNTERFEITING UNDER 15 U.S.C. § 1114

77.    BTL repeats and re-alleges paragraphs 1–47 as if fully set forth herein.

78.    Defendants use marks identical to BTL's EMSCULPT®, EMSCULPT NEO®, EM®, and BTL Logo federally registered trademarks.

79.    BTL has not authorized Defendants' use of the BTL Trademarks to advertise and promote body-contouring services using the Accused Device(s).

80.    Defendants' unauthorized use of the BTL Trademarks is likely to (a) cause the public and consumers to believe that Defendants' body-contouring services using the Accused Device(s) are authorized by and/or affiliated with BTL; and (b) result in Defendants unfairly benefitting from the reputation of BTL and the BTL Trademarks to the substantial and irreparable injury of consumers, BTL, the BTL Trademarks, and the substantial goodwill represented thereby.

81.    Defendants' acts as set forth herein constitute trademark counterfeiting in violation of 15 U.S.C. § 1117(b)(1) and reflect Defendants' intent to exploit the goodwill and strong brand recognition associated with the BTL Trademarks.

## COUNT V: VIOLATION OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT, TEX. BUS. & COM. CODE §§ 17.46, 17.50

82.    BTL repeats and re-alleges paragraphs 1–47 as if fully set forth herein.

83.    The acts of Defendants complained of herein in Counts II–IV constitute deceptive and unfair trade practices in violation of Tex. Bus. & Com. Code § 17.46 *et seq.*

84.    Defendants' unauthorized, intentional, and willful use of the BTL Trademarks and confusingly similar variations thereof to promote, market, offer for sale, and sell body-contouring

services using the Accused Device(s) constitutes deceptive and unfair trade practices in violation of Tex. Bus. & Com. Code § 17.46 *et seq.*

85.     Defendants' unauthorized, intentional, and willful representations are false and misleading and were done to deceive the consuming public in Texas and to capitalize on the goodwill developed by BTL.

86.     Defendants' use of the BTL Trademarks and confusingly similar variations thereof in connection with the marketing and sale of body-contouring services using the Accused Device(s) constitutes unfair competition that is likely to cause confusion, mistake, and deception among consumers as to the affiliation, connection, or association with BTL or the origin, sponsorship, or approval of the body-contouring services using the Accused Device(s) by BTL. Defendants' deceptive actions are likely to influence the consuming public's purchasing decisions. Defendants' unfair competition jeopardizes the goodwill created by BTL in the BTL Trademarks.

87.     Despite their actual and constructive knowledge of BTL's use and rights in the BTL Trademarks, Defendants have continued to use the BTL Trademarks and confusingly similar variations thereof in association with the promotion, advertising, marketing, and/or sale of body-contouring services using the Accused Device(s) without BTL's authorization or consent. Defendants' actions are deliberate and willful and have been done with the intention of trading upon the valuable goodwill created by BTL in the BTL Trademarks.

88.     BTL has sustained injury, damage, and loss in Texas based on Defendants' actions. Defendants' actions directly or indirectly affected Texas.

89.     Defendants are liable for a violation of Tex. Bus. & Com. Code § 17.46 *et seq.*

90.     BTL is entitled to all relief available under this Section.

## COUNT VI: COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

91.      BTL repeats and re-alleges paragraphs 1–47 as if fully set forth herein.

92.      This claim arises under the common law of the State of Texas.

93.      Defendants have engaged in unfair competition through their reliance and exploitation of consumer mistake and confusion, and its deliberate efforts to exploit the goodwill represented by the BTL Trademarks in connection with the marketing and sale of body-contouring services using the Accused Device(s).

94.      Defendants' aforementioned acts constitute trademark infringement and unfair competition in violation of Texas common law.

95.      As a proximate result of Defendants' actions, BTL has suffered and will continue to suffer damages.

96.      BTL has no adequate remedy at law and will continue to suffer irreparable harm unless Defendants are enjoined.

97.      By reason of Defendants' unlawful conduct as alleged above, BTL has been substantially injured and is entitled to damages and Defendants' profits attributable to their infringement, which are presently indeterminate, and the costs of this action.

## PRAYER FOR RELIEF

WHEREFORE BTL requests entry of judgment against Defendants as follows:

A.      A judgment that Defendants have infringed one or more claims of the Asserted Patent in violation of 35 U.S.C. § 271(a)–(c);

B.      An award of damages not less than $125,000 for infringement of the Asserted Patent, with said damages to be trebled because of the intentional and willful nature of Defendants' infringement, as provided by 35 U.S.C. § 284;

C.      A judgment that Defendants have willfully infringed one or more claims of the Asserted Patent;

D.      A determination that this case is "exceptional" under 35 U.S.C. § 285 and an award of BTL's reasonable attorneys' fees;

E.      An order permanently enjoining Defendants, their officers, directors, employees, agents, and all persons acting in concert with them, from infringing the Asserted Patent;

F.      A judgment that Defendants have violated the Lanham Act, 15 U.S.C. § 1114, by committing acts of trademark infringement;

G.      A judgment that Defendants' use of the "HIEMS" mark, as alleged in this Complaint, infringes BTL's HIFEM® trademark;

H.      A judgment that Defendants' use of the "EMSCULPT" mark, as alleged in this Complaint, infringes BTL's EMSCULPT® trademarks;

I.      A judgment that Defendants' use of the "EMSCULPT NEO" mark, as alleged in this Complaint, infringes BTL's EMSCULPT NEO® trademark;

J.      A judgment that Defendants' use of the "EM" mark, as alleged in this Complaint, infringes BTL's EM® trademarks;

K.      A judgment that Defendants' use of the BTL Logo mark, as alleged in this Complaint, infringes BTL's BTL Logo trademark;

L.      A judgment that Defendants' use of the "EMSCULPTOR" mark, as alleged in this Complaint, infringes BTL's EMSCULPT® trademarks;

M.      A judgment that Defendants' use of the "UMSCULPTOR NEO" mark, as alleged in this Complaint, infringes BTL's EMSCULPT NEO® trademark;

N.      A judgment that Defendants' use of the "EMCULPTOR NEO" mark, as alleged in

this Complaint, infringes BTL's EMSCULPT NEO® trademark;

O.    A judgment that Defendants' use of the "EMSCULPTOR NEO" mark, as alleged in this Complaint, infringes BTL's EMSCULPT NEO® trademark;

P.    A judgment that Defendants have violated the Lanham Act, 15 U.S.C. § 1125(a), by committing acts of federal unfair competition, false designation of origin, and false advertising;

Q.    A judgment that Defendants have violated the Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code § 17.46 *et seq.*;

R.    A judgment that Defendants have violated Texas common law;

S.    An award of damages for Defendants' infringement of the BTL Trademarks, including Defendants' profits, any damages sustained by BTL, and the costs of the action as provided by 15 U.S.C. § 1117(a), with said damages to be trebled because of the intentional and willful nature of Defendants' infringement, as provided by 15 U.S.C. § 1117(b);

T.    A judgment that this case is "exceptional" under 15 U.S.C. § 1117(a) and an award of reasonable attorneys' fees;

U.    A judgment that Defendants' conduct in violating the BTL Trademarks is willful and malicious;

V.    Alternatively, an award of statutory damages for Defendants' infringement of the BTL Trademarks in an amount of $200,000 per counterfeit mark. That amount to be heightened to $2,000,000 per counterfeit mark in accordance with 15 U.S.C. § 1117(c)(2) for Defendants' willfulness;

W.    An award of damages against Defendants as a result of their wrongful acts against BTL in an amount to be proved at trial;

X.    An award of any and all of Defendants' profits arising from the foregoing acts;

Y.    An award of pre-and post-judgment interest of any monetary damages at the highest rate allowed by law;

Z.    Permanent injunctive relief enjoining Defendants from:

    i.    using the BTL Trademarks or any reproductions, copies, or colorable imitations thereof, in any manner in connection with the promotion, marketing, advertising, offering for sale, or sale of any good or service that is not a good or service offered by a genuine BTL product, or is not authorized by BTL to be offered in connection with the BTL Trademarks;

    ii.    passing off, inducing, or enabling others to sell or pass off any good or service as a good or service offered by a genuine BTL product, or any other good or service offered by BTL, that is not BTL's or not offered under the authorization, control, or supervision of BTL and approved by BTL for sale under the BTL Trademarks;

    iii.    committing any acts calculated to cause consumers to believe that Defendants' goods or services are those sold under the authorization, control or supervision of BTL, or are sponsored by, approved by, or otherwise connected with BTL; and

    iv.    further infringing the BTL Trademarks and damaging BTL's goodwill.

AA.    An award of BTL's costs and expenses in this action; and

BB.    For such other relief as the Court may deem just and proper.

## **JURY DEMAND**

BTL hereby demands a trial by jury on all issues so triable.

Dated: March 18, 2025

Respectfully submitted,

/s/ *M. Dru Montgomery*
M. Dru Montgomery
Southern District Bar No. 1005391
Texas State Bar No. 24010800
E-mail: dru@heartfieldlawfirm.com
THE HEARTFIELD LAW FIRM
2195 Dowlen Road
Beaumont, Texas 77706
Telephone: (409) 866-3318
Facsimile:   (409) 866-5789

- and -

Seth R. Ogden (*pro hac vice* to be filed)
E-mail:  sro@iplawgroup.com
PATTERSON INTELLECTUAL PROPERTY LAW, P.C.
1600 Division Street, Suite 500
Nashville, TN 37203
Telephone: (615) 242-2400
Facsimile: (615) 242-2221

**Attorneys for Plaintiff BTL Industries, Inc.**